CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
March 18, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHAWN TOLBERT, ) | |
| Plaintiff, ) | Case No. 7:23-cv-00534 |
| ) | |
| v. ) | |
| ) | |
| NURSE DEBORAH QUESENBERRY ) | By: Michael F. Urbanski |
| et al., ) | Senior United States District Judge |
| Defendants. ) | |

## MEMORANDUM OPINION

Shawn Tolbert, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that defendants violated his rights under the Fifth, Eighth and Fourteenth Amendments. The case is presently before the court on a motion to dismiss filed by defendants Deborah Quesenberry, Lisa Ferguson, Samantha Hunt, Brenda Moran, James Keen, and Sgt. Donald Cornett, ECF No. 32. For the reasons set forth below, ECF No. 32, is **DENIED.**

### I.  Background

The following summary of the facts is taken from the complaint, amended complaint and the accompanying exhibits.[1] For purposes of the motion to dismiss, the facts are presented in the light most favorable to Tolbert. See Washington v. Hous. Auth. of the City of Columbia, 58 F.4th 170, 177 (4th Cir. 2023) (noting that a court reviewing a motion to dismiss must "accept all factual allegations as true and draw all reasonable inferences in favor of the

---

[1] The court may consider exhibits attached to the complaint when ruling on a motion to dismiss. See Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

plaintiff"). The court notes that Tolbert filed a complaint followed by an amended complaint, which the court construes as a supplement to the complaint. See Henderson v. Tower Fed. Credit Union, No. 1:23-CV-01314-JRR, 2024 WL 1722555, *1 n.1 (D. Md. Apr. 22, 2024) (construing pro se amended complaint as supplement to complaint); see also Morings v. Wells, No. 7:16-CV-00139, 2018 WL 2124113, *1 n.2 (W.D. Va. May 8, 2018) (in pro se case where "[t]he amended complaint does not try to alter the allegations or claims in the original complaint but merely seeks to more accurately address the claims as to the correct defendants," deeming "the amended complaint as incorporating the original complaint" and "consider[ing] both the original and amended complaints as Plaintiff's pleading.").

Tolbert's claims arise from events occurring at New River Valley Regional Jail from approximately August 31-September 7, 2022. ECF No. 1 at 2; ECF No. 10 at 4-8. Tolbert alleges that defendants Quesenberry and Ferguson violated his Fifth Amendment rights by denying him access to the appropriate grievance forms regarding his medical treatment.[2] ECF No. 1 at 2; ECF No. 1-1 at 1; ECF No. 10 at 6-7. Tolbert further alleges that all defendants violated his Eighth and Fourteenth Amendment rights by being indifferent to his medical needs and providing inadequate medical care. ECF No. 1 at 2; ECF No. 10 at 2. Specifically, Tolbert alleges that he was discharged from LewisGale Hospital and transported to New River

---

[2] Tolbert specifically alleges this Fifth Amendment claim in his original complaint. See ECF No. 1 at 2. In his amended complaint, Tolbert does not allege the Fifth Amendment claim as a separate count. Compare ECF No. 10 at 2 § E with ECF No. 1 at 2 § E. However, Tolbert alleges that he did not administratively exhaust his Eighth and Fourteenth Amendment claims due to the fact he was "denied access to forms." ECF No. 10 at § D.1. He further alleges that he was "denied access to [complaints]." Id. at 6 (regarding defendants Quesenberry and Ferguson). Out of an abundance of caution, the court construes Tolbert's complaint and amended complaint as asserting a cause of action under the Fifth Amendment, despite the amended complaint's failure to include a separately delineated Fifth Amendment claim possibly indicating plaintiff no longer seeks to assert that claim.

Valley Regional Jail (NRVRJ) with a care plan specifically recommending that he have a "sitter at all times due to the serious nature of [his] condition." ECF No. 10 at 4. Tolbert states that on August 31, 2022, defendant Hunt "[chose] to leave me laying [o]n a cell floor instead of giving the medical help I needed" despite defendant Hunt's knowledge that Tolbert had recently been released from the hospital. Id. at 4; see also ECF No. 1-1 at 11. Tolbert further alleges that on September 1, 2022, he was seen by defendant Moran but was not "treated supposedly because I was uncooperative." Id. at 3-4; see also ECF No. 1-1 at 11. Tolbert alleges he was uncooperative with defendant Moran solely due to his injuries. Id. Tolbert alleges that on September 2, 2022, James Keen and Sgt. Cornett "chose to leave me laying in the cell," because Tolbert was unresponsive, "instead of getting help for me when I was injured." Id. at 4; see also ECF No. 1-1 at 11. Tolbert states he was unresponsive due to the nature of his injuries, which prevented him from responding. Id. Tolbert alleges that on September 5, 2022, he was beginning to "function" properly, and sought to use complaint procedures to inquire about "why I was not treated [properly] and left laying in a cell" despite "still [being] injured with [dizziness], headaches, ringing of the ears and popping elbows and knees." Id. at 6. Tolbert states that defendant Quesenberry responded to Tolbert's written request by stating that he had been treated appropriately. Id.; see also ECF No. 1-1 at 6 (correspondence between Tolbert and Quesenberry). Tolbert further alleges that defendant Quesenberry was aware of the hospital's discharge recommendations for Tolbert, but "chose to leave me laying in a cell instead of [providing] medical attention that was needed." Id. Tolbert alleges that on September 7, 2022, he wrote a second request to the medical department seeking to take advantage of grievance procedures, but was denied access to them.

3

Id. at 6-7. Tolbert alleges that defendant Ferguson responded to Tolbert's request for grievance procedures. Id.; see also ECF No. 1-1 at 4-5 (correspondence between Tolbert and Ferguson). Tolbert alleges defendant Ferguson "[knew] about my condition" and knew about the discharge plans from the hospital, but "left me injured in a cell" instead of providing treatment "in the medical department" or "sen[ding] [Tolbert] back to the ER" because of the "serious condition I was in." Id.

Tolbert attaches to his complaint a series of excerpts from medical records dated August 31 to September 6, 2022. See ECF 1-1 at 7-12. Alongside these records, Tolbert offers supporting facts to expand on the medical record excerpts. See id. at 1-3. Tolbert does not state the specific nature of his injury or condition in his original complaint, but does advise he was "in pain with headaches and dizziness," along with "ringing of my ears" and "popping" of his "knees and elbows." ECF No. 1-1 at 7-8. In his amended complaint, Tolbert notes his condition was of a "serious nature," that he was "injured," and presented with "dizziness, headaches, ringing of the ears and popping elbows and knees." ECF No. 10 at 4-6. Tolbert's excerpted medical records do not clearly indicate a diagnosis. See, e.g., ECF No. 1-1 at 8-9 (notes of Tolbert's hospital stay prior to the actions in this complaint). However, Tolbert's NRVRJ Chart Notes state that he was diagnosed with "conversion disorder"[3] by the hospital. ECF No. 1-1 at 11. The discharge notes from the hospital appear to state that Tolbert should

---

3 "Conversion disorder, also known as functional neurological symptom disorder (FND), is a psychiatric disorder characterized by symptoms affecting sensory or motor function. These signs and symptoms are inconsistent with patterns of known neurologic diseases or other medical conditions. Although functional neurologic disorder has no organic basis, the symptoms significantly impact a patient's ability to function. Moreover, the symptoms cannot be controlled at will and are not considered to be feigned intentionally by the patient." Jessica L. Peeling & Maria Rosaria Muzio, Functional Neurologic Disorder, StatPearls Publishing, May 8, 2023, https://www.ncbi.nlm.nih.gov/books/NBK551567/.

4

"[r]eturn to the emergency department if you develop worsening pain, fever/chills, cannot eat/drink, pass-out" and that Tolbert "do[es] need mental health follow-up." ECF No. 1-1 at 15. The discharge notes also state that Tolbert's condition was "stable." Id.

In addition, Tolbert attaches Inmate Request Forms dated September 6 and September 8, 2022, which show his written requests regarding filing an informal complaint, and defendants Ferguson and Quesenberry's responses. See ECF No. 1-1 at 4-6. Tolbert's form dated September 6, 2022, suggests that when Tolbert was brought to NRVRJ he was "never see[n] [by] medical" despite being "disoriented with possible concussion or [seizure]." Id. at 4. Defendant Ferguson responded to Tolbert's form, stating that Tolbert was seen by a nurse after being booked into NRVRJ, and that, at that time, Tolbert was "not disoriented" and that the hospital "did not diagnose [Tolbert] with a concussion." Id. at 5.

Based on these events, Tolbert filed this action under 42 U.S.C. § 1983. He seeks monetary damages from defendants in their individual capacities. ECF No. 1 at 3; ECF No. 10 at 3.

## II. Standard of Review

Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). See ECF Nos. 32. To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely

5

offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

When a complaint is filed by a pro se litigant, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

## III. Discussion

Tolbert seeks relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights, specifically, violations of his rights under the Fifth, Eighth and Fourteenth Amendments. "To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016).

### a. Fifth Amendment

To establish a claim under the Fifth Amendment Due Process Clause, plaintiff must show that the government deprived him of a liberty or property interest without providing notice and a meaningful opportunity to be heard. See Mathews v. Eldridge, 424 U.S. 319, 348 (1976). However, the Fourth Circuit has held that the Constitution creates "no entitlement to

6

grievance procedures." See Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994) (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991)); see also Godfrey v. Russell, No. 7:14CV00476, 2015 WL 5657037, *12 (W.D. Va. Sept. 24, 2015), aff'd, 667 F. App'x 68 (4th Cir. 2016) (granting motion to dismiss pro se prisoner plaintiff's claims of due process violations for denial of grievance procedures "because inmates have no constitutionally protected right to a grievance procedure… Thus, they have no federally protected right to participation in any particular facet of an existing grievance procedure."). Therefore, since the denial of grievance procedures is not a constitutionally protected liberty or property interest, plaintiff's Fifth Amendment claim must be dismissed.

### b. Eighth and Fourteenth Amendment

At the time of the events giving rise to this complaint, plaintiff was an arrestee. See ECF No. 1-1 at 7 (hospital notes describing circumstances of plaintiff's contact with police, including that plaintiff had outstanding warrants); id. at 4 (defendant Ferguson noting that Tolbert was "released from the hospital" then "booked in" at NRVRJ).[4] Therefore, the court construes plaintiff's deliberate indifference claim as brought under the Fourteenth Amendment. See, e.g., Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987) ("while the Eighth Amendment is properly invoked on behalf of those convicted of crimes, it is the Due Process Clause of the Fourteenth Amendment that applies to pretrial detainees"); Davis v. Keller, No. 7:23-CV-00593, 2024 WL 4326544, *5 (W.D. Va. Sept. 27, 2024) (construing pro se plaintiff's complaint as brought under the Fourteenth Amendment where plaintiff was a pretrial detainee

---

[4] The court notes that plaintiff does not specifically allege whether he was an arrestee, pretrial detainee, or convicted prisoner at the time of the incidents in the complaint and amended complaint in this action. However, the court construes the attachments to the complaint to indicate plaintiff's status as an arrestee.

7

and not a convicted prisoner).

A pretrial detainee's claim of deliberate indifference is brought pursuant to the Due Process Clause of the Fourteenth Amendment. See Stevens v. Holler, 68 F.4th 921, 930-31 (4th Cir. 2023) (addressing a pretrial detainee's claim of deliberate indifference to serious medical needs). The Due Process Clause protects pretrial detainees from governmental actions that are "not rationally related to a legitimate nonpunitive purpose or that ... appear excessive in relation to that purpose." Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015). In Kingsley, the Supreme Court held that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." Id. at 397. The Fourth Circuit concluded that "Kingsley's objective standard extends not just to excessive force claims; it applies equally to deliberate indifference claims." Short v. Hartman, 87 F.4th 593, 606 (4th Cir. 2023).

To state a claim for deliberate indifference to a medical need, a pretrial detainee must plead that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm;
> (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed;
> (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and
> (4) as a result, the detainee was harmed.

Short, 87 F.4th at 611. Under this standard, the plaintiff is not required to demonstrate "that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. Instead, a plaintiff need only "show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"

8

Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). Allegations of mere negligence are "not enough" to meet this standard. Id. at 611-12.

Against this backdrop, the court must first consider whether plaintiff has plausibly stated a medical condition or injury that posed a substantial risk of serious harm. Here, Tolbert stated he was "in pain with headaches and dizziness," along with "ringing of my ears" and "popping" of his "knees and elbows." ECF No. 1-1 at 7-8. He further noted his condition was of a "serious nature" and that he was "injured," to the extent that he was "uncooperative" and/or "wasn't able to respon[d]" at the time of the events in the complaint due to the nature of his injuries. ECF No. 10 at 4-5. NRVRJ records indicate Tolbert was diagnosed with "conversion disorder" by the hospital. ECF No. 1-1 at 11. The discharge notes from the hospital state that Tolbert should "[r]eturn to the emergency department if you develop worsening pain, fever/chills, cannot eat/drink, pass-out" and that Tolbert "do[es] need mental health follow-up." ECF No. 1-1 at 10. However, the discharge notes also state that Tolbert's condition was "stable." Id.

A serious medical condition or need is one that has "been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted; defining term as used in Eighth Amendment deliberate indifference analysis); see Franklin v. Jones, No. 7:23-CV-00481, 2025 WL 734056, *3 (W.D. Va. Mar. 7, 2025) (applying definition of serious medical condition to Fourteenth Amendment deliberate indifference analysis post-Short). Here, at discharge, the hospital deemed plaintiff's condition "stable" but added that plaintiff required mental health follow-up, and should return

9

to the emergency room should he develop worsening pain, fever/chills, the ability to not eat or drink, or pass-out. ECF No. 1-1 at 10. According to the NRVRJ Chart Notes, on August 31, 2022, plaintiff was laying on the floor, but was able to respond to questions, including reporting hunger, for which he was provided food. Id. at 11. The notes also indicate that plaintiff was on "OBS," which could indicate that plaintiff was under observation by staff. See id. (noted for dates September 2, 5, 6); see also Appendix I-1, "Jail Vulnerability Assessment: A Systems Approach to Improve Safety and Security," Dep't of Justice (Dec. 2008) (defining OBS as "observation by staff"). Specifically, it appears plaintiff was "placed on OBS… after being incarcerated and presenting with erratic behaviors toward staff," and was only recommended to be released from OBS after presenting with a normal affect. Id. (note dated September 6, 2022). Despite defendants' argument to the contrary, the court finds that the combination of diagnosed conversion disorder, along with the hospital's notation that plaintiff should have follow-up mental health treatment and NRVRJ's placement of plaintiff under presumed observation for multiple days, indicates that plaintiff had a serious medical need, diagnosed by a physician, such that even a layperson—in fact here even medical professionals through presumedly placing plaintiff under observation—identified plaintiff as mandating medical attention. The plaintiff therefore has met the first part of the Fourteenth Amendment analysis.

The court proceeds to consider whether plaintiff has pleaded the remainder of the Fourteenth Amendment deliberate indifference standard. "[P]laintiff need not show that the defendant had actual knowledge of the condition at issue." Young v. Sparks, No. 7:23-CV-00180, 2024 WL 3842575, *6 (W.D. Va. Aug. 16, 2024) (quoting Short, 87 F.4th at 611

(alterations adopted)). Here, however, plaintiff alleges that defendants Hunt, Ferguson and Quesenberry had actual knowledge of plaintiff's diagnosis and treatment plan from LewisGale Hospital. See ECF No. 10 at 4, 6-7. Plaintiff does not specifically allege that defendants Moran, Keen and Cornett had specific knowledge of plaintiff's diagnosis from LewisGale, but does state that "all caregivers [were] given a discharge plan from LewisGale" that went to "the serious nature of my condition." Id. at 4-5. However, based on the chart notes from NRVRJ, it appears at least defendants Keen and Hunt also likely had actual knowledge of plaintiff's diagnosis. See ECF No. 1-1 at 11. Defendant Cornett may also have had constructive knowledge of plaintiff's condition, as a layperson encountering a patient under medical observation would have understood that that patient had serious medical needs.

Plaintiff "voiced frustrations over his treatment… stating he felt staff had not taken his state of delirium seriously." ECF No. 1-1 at 11. He further alleges that his injuries, including "dizziness, headaches, ringing of my ears and [popping of my] knees and elbows… [are] injur[ies] [that] are now a[n] everyday part of my life." ECF No. 1-1 at 3. Because the serious condition on which his Fourteenth Amendment claim is predicated is his diagnosis of conversion disorder, the question is whether any delay or failure to provide treatment was done in the face of an unjustifiably high risk of harm, and/or resulted in harm, related to plaintiff's conversion disorder.

At this stage of the case, plaintiff has sufficiently alleged that defendants were deliberately indifferent to his serious medical needs. Plaintiff has alleged that despite knowledge of his medical condition, defendants left him lying on a cell floor and were

11

otherwise deliberately indifferent to the unresponsive state occasioned by his medical condition. Accordingly, the motion to dismiss is **DENIED**.

## IV.    Conclusion

For the reasons set forth herein, the motion to dismiss filed by defendants Quesenberry, Ferguson, Hunt, Moran, Keen and Cornett, ECF No. 32, is **DENIED**. To the extent plaintiff has asserted a claim under the Fifth Amendment, that claim is **DISMISSED**. An appropriate order will be entered.

Entered: *March 18, 2025*

Michael F. Urbanski
Senior United States District Judge